**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| CERES ENVIRONMENTAL SERVICES,) INC., ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> COLONEL MCCRARY TRUCKING, ) LLC, ) <br> ) <br>     **Defendant.** ) | **CIVIL ACTION 09-0642-WS-B** |

**ORDER**

This matter is before the Court for final resolution. The parties requested that the case be submitted on briefs in lieu of a bench trial, (Doc. 47 at 8), and the Court agreed. (Doc. 49 at 1). The parties have submitted trial briefs and exhibits, (Docs. 52-62), and the matter is ripe for resolution.

**BACKGROUND**

The defendant ("McCrary") was under contract ("the Subcontract") to the plaintiff ("Ceres") to provide debris removal services following Hurricane Katrina. Ceres terminated the Subcontract on June 27, 2007. On July 11, 2007, a McCrary driver ("Johnson") was involved in a serious traffic accident in Baldwin County. The injured parties sued McCrary, Ceres and others in Alabama state court ("the Suit"). McCrary and Ceres eventually entered separate pro tanto settlements in the Suit.

Ceres filed a cross-claim against McCrary in the state action, seeking defense and indemnity based on contractual indemnity and McCrary's liability insurance policy. Upon obtaining a severance of the cross-claim, McCrary timely removed. Ceres has since abandoned its claim for defense and indemnity under McCrary's liability insurance

[1]

policy, leaving only contractual indemnity in play.  (Doc. 47 at 2; Doc. 58 at 3).  On competing motions for summary judgment, the Court ruled that the indemnity provision of the Subcontract is triggered by the Suit.  (Doc. 41 at 6).  Other issues concerning the indemnity claim were not resolved on summary judgment.

## DISCUSSION

The parties agree that the Subcontract is governed by Louisiana law.  (Doc. 47 at 2).  They also agree that Ceres has the burden of proving three legal elements "in order to prevail in [sic] its contractual indemnity claim":  (1) "that Ceres was potentially liable in the State Suit"; (2) "that Ceres did not fail to assert in the State Suit an available defense that 'would have defeated the action'"; and (3) "that the settlement amount was reasonable."  (*Id*.).  McCrary "concedes the second element."  (*Id*. at 3 n.2).

## I.  Potential Liability.

McCrary first argues that Ceres must establish its "actual liability" in the Suit, because it did not provide McCrary an opportunity to approve the underlying settlement.  (Doc. 59 at 4-7).  As just noted, however, McCrary has already admitted that Ceres need prove only potential liability.  This admission occurred in the parties' joint pretrial document.  The parties were warned long ago that, "[o]nce adopted by the Court as part of the Pretrial Order, the Joint Pretrial Document shall constitute the final statement of the claims, affirmative defenses and relief at issue; shall govern the conduct of the trial; and shall constitute the basis for any relief afforded by the Court."  (Doc. 18, Attachment at 4).  The parties' joint statement of Ceres' indemnity claim in the joint pretrial document listed the elements noted above and, in particular, confirmed that only potential liability need be established.  Once the Court adopted the joint pretrial document following the final pretrial conference, (Doc. 49 at 2), this statement of the indemnity claim became controlling for purposes of trial.  Accordingly, McCrary preserved no

"actual liability" issue, it is not in the case, and it cannot form the basis of a judgment for McCrary.[1]

The background of this case is curious and gives rise to the principal question raised in this litigation: whether, when it settled the Suit, Ceres was "potentially liable" to the underlying plaintiffs. In a nutshell, Johnson was an employee of McCrary, and McCrary was a subcontractor of Ceres. But the latter relationship ended on June 27, two weeks before Johnson's accident. The Suit alleged that Ceres had a non-delegable duty to perform drug testing and a background check on Johnson; that Ceres negligently or wantonly hired Johnson without doing so; that Ceres negligently or wantonly thereafter allowed Johnson to drive vehicles on the job; that Ceres negligently or wantonly hired, trained and supervised Johnson; and that Ceres negligently or wantonly entrusted a vehicle to him.

A lawyer reviewing these circumstances would immediately notice at least two possible weaknesses with the underlying plaintiffs' case against Ceres. First, how could Ceres, which had no existing relation to McCrary or Johnson at the time of the accident, have a duty to the underlying plaintiffs? Second, how could anything Ceres had done or not done on or before June 27 proximately cause a traffic accident in Baldwin County

_____

[1] Nor is McCrary's argument persuasive on its merits. It relies solely on *Walters v. A-Way Tank Service, Inc*., 802 So. 2d 1 (La. Ct. App. 2000), which appears to support McCrary's position in a contractual indemnity setting. *Id*. at 5. *Walters*, however, drew on maritime principles rather than land-based indemnity rules, has been embraced in the latter context by no known court, and has been repeatedly contradicted by Louisiana appellate opinions from the First, Fourth, Fifth and even its own Third Circuit, as well as by federal courts in Louisiana and by the federal Fifth Circuit. *Tabor v. Anco Insulations, Inc*., 999 So. 2d 258, 265 (La. App. 2008) (Third Circuit); *Sullivan v. Franicevich*, 899 So. 2d 602, 609 (La. App. 2005) (Fourth Circuit); *Vaughn v. Franklin*, 785 So. 2d 79, 87 (La. App. 2001) (First Circuit); *Rovira v. LaGoDa, Inc*., 551 So. 2d 790, 795 (La. App. 1989) (Fifth Circuit); *Coleman v. School Board*, 418 F.3d 511, 525 n.57 (5th Cir. 2005); *Kansas City Southern Railway Co. v. Pilgrim's Pride Corp*., 2010 WL 1293340 at *7 n.8 (W.D. La. 2010) (Hicks, J.); *Weaver v. CCA Industries, Inc*., 2009 WL 1322290 at *13 (W.D. La. 2009) (James, J.). In light of this overwhelming authority, McCrary's view would not prevail even had the issue been preserved.

two weeks later? Ceres recognized these issues and a host of others. It filed a motion to dismiss and/or for summary judgment in February 2008 asserting, inter alia, that it owed no duty to the plaintiffs because it had no relationship with McCrary or Johnson on July 11 and because the risk of harm was unforeseeable. Ceres also argued that the plaintiffs could not establish causation. The trial judge denied the motion without opinion in August 2008. (Doc. 47 at 6-7).

In April 2009, Ceres filed another motion for summary judgment. Ceres argued that it had no duty to the plaintiffs after the Subcontract was terminated. It also argued that its actions and inactions did not proximately cause the accident for various reasons. The trial judge denied the motion on September 15, 2009. (Doc. 47 at 7). His brief order states that, "[a]fter reviewing all the pleadings and hearing oral argument, this Court finds that there are genuine issues of material fact which preclude the entry of summary judgment." (Exhibit 48).

Trial by jury was set to commence on September 28, 2009. On that date, the trial judge approved a consent judgment and settlement between the plaintiffs and Ceres. (Doc. 47 at 7-8).

McCrary argues that "[t]he law of Alabama and the facts of this case indisputably provide that Ceres could not have been potentially liable for any of these causes of action" asserted in the Suit, because Ceres owed the plaintiffs no duty and because there was no causation. (Doc. 59 at 9-19). McCrary explicates Alabama law in some detail but, even if its analysis is correct,[2] it misses the point. Ceres made these same arguments

---

[2] The trial judge did not deny summary judgment based on the law, but on the existence of genuine issues of material fact concerning application of the law. McCrary has not shown that there were in fact no such genuine fact issues based on the materials before the trial judge when he ruled on motion for summary judgment. To do so, McCrary would have to identify the evidence before the trial judge and demonstrate that this evidence was in conflict – something McCrary has not even attempted. Thus, McCrary has not shown that the trial judge's ruling denying summary judgment was wrong. Nor has McCrary shown that the same factual issues (whatever they were) that precluded summary judgment could not be resolved by the jury adversely to Ceres.

to the trial judge – twice – and was rebuffed both times. Potential liability depends not merely on the law and evidence as construed by outsiders but also on the rulings of the presiding judge. Regardless of what the "correct" result "really" is in the circumstances presented in the Suit, the trial judge had declared that Ceres must face trial by jury, which rendered Ceres potentially liable to the underlying plaintiffs. Even if the ruling on summary judgment was incorrect, Ceres was at that point directly and immediately exposed to liability.

McCrary objects that Mr. Black defines "liability" as "legally obligated," so that only exposure to a legal obligation supports a determination that an indemnitee faces potential liability. (Doc. 62 at 2). But the precise function of a trial is to establish the parties' legal obligations inter se, and a judgment, including one embracing a jury verdict, establishes the parties' legal obligations. *E.g., O'Brien v. O'Brien*, 653 So. 2d 1364, 1367 (La. App. 1995) (declaratory judgment). McCrary's semantic argument gets it nowhere.

McCrary complains that a trial judge may deny a motion for summary judgment "for any number of reasons unrelated to the ultimate merits of the case," including "poor briefing, favoritism, an overworked court, a lazy judge, confusion of the issues, favoritism [sic], sympathy, political concerns, good motive, bad motive, no motive at all, the court could just be wrong, could misinterpret law or facts, be swayed by incorrect representations of facts by plaintiffs' attorney, or the Court was merely hoping that the case would settle before he had to issue a final judgment." (Doc. 59 at 22-23). Since McCrary explicitly denies suggesting that any of these causes (other than simple judicial error) infected the trial judge's denial of summary judgment, (*id*. at 22), they are not relevant to the Court's consideration. But even if they were, these hypothetical motivations do not alter the salient point: by rejecting Ceres' supposedly "can't lose" arguments – for whatever reason – the trial judge placed Ceres on the very precipice of losing, exposing it to potential liability.

The structure of Louisiana's rule on contractual indemnity further supports the proposition that Ceres was potentially liable to the underlying plaintiffs despite its (according to McCrary) airtight duty and causation arguments. As noted above, an indemnitee that is potentially liable will not receive indemnity if it is potentially liable only because it "fail[ed] to assert" an available defense that "would have defeated the action." This indicates that potential liability is measured independently of "can't lose" defenses.[3] It also indicates that "can't lose" defenses preclude indemnity only if the indemnitee did not assert them, which means they do not preclude indemnity if the indemnitee asserted them but they were judicially rejected.

McCrary notes that the trial judge "may" have changed his mind at trial or after and granted a directed verdict or judgment notwithstanding the verdict. Or the jury may have found for Ceres. Or an appellate court may have overturned a plaintiffs' verdict. (Doc. 62 at 8). Almost any number of things "may" have happened, but one of them is that the jury would find for the plaintiffs and that the trial and appellate courts would decline to alter that verdict. The trial judge's ruling, inexplicable as it may be to McCrary, introduced uncertainty as to the ultimate outcome of the litigation. That is precisely what left Ceres exposed to potential liability.[4]

Ultimately, McCrary is left to object that Ceres cites no case that "has ever held that potential liability is merely having to face a jury." (Doc. 62 at 3). Never mind that McCrary cites no case to the contrary, or that there is precious little discussion of any

---

[3] Since McCrary concedes it challenges only the first, "potentially liable" element of contractual indemnity, not the second, "would have defeated" element, (Doc. 47 at 3 n.2), its discussion of Ceres' "can't lose" arguments is relevant only to an element it has already conceded, rendering its discussion irrelevant.

[4] McCrary insists that the Court cannot assume an Alabama jury "would ignore the facts and not follow the law when rendering a verdict." (Doc. 62 at 5). But juries have wide leeway in finding the facts and assigning them significance, and trial judges have wide leeway in fashioning jury charges. What the Court cannot assume is that the jury would have found for Ceres.

kind in the cited cases concerning what constitutes "potential liability." Ceres' actual predicament was much more grave than McCrary depicts. Ceres was not merely required to face a jury, it was required to do so with all of its defenses to liability having been judicially rejected. At that point, all Ceres could do was cross its fingers and hope for the best – a favorable jury, a change of mind by the trial judge, or a home run on appeal. If that is not potential liability, there is no such thing.

The parties agreed prior to trial to the following statement concerning potential liability:

> "Potential liability actually means nothing more than that the indemnitee acted reasonably in settling the underlying suit. The reasonableness of the settlement consists of two components, which are interrelated. The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure. The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. If the amount of the settlement is reasonable in light of the fact finder's analysis of these factors, the indemnitee will have cleared this hurdle."

(Doc. 47 at 3 (quoting *Kansas City Southern Railway Co. v. Pilgrim's Pride Corp.*, 2010 WL 1293340 at *9 (W.D. La. 2010)). There was in this case, as in almost any case, a "possibility that [Ceres] would have prevailed." But success was not guaranteed, certainly not after Ceres' "can't lose" arguments lost. Ceres was potentially liable when it settled with the underlying plaintiffs on the literal eve of trial.

## II. Reasonableness of Settlement Amount.[5]

Ceres paid $2.9 million to settle the principal plaintiffs' claims.[6] McCrary's sole argument is that any settlement of any amount is automatically unreasonable because

---

[5] Ceres questions which party bears the burden with respect to this element. (Doc. 56 at 7-8). Ceres, however, has already admitted in the joint pretrial document that it bears this burden. (Doc. 47 at 2).

Ceres was not potentially liable.  (Doc. 47 at 5; Doc. 59 at 14; Doc. 62 at 9-10).  Because, as discussed in Part I, Ceres was potentially liable, McCrary's only argument fails.

As noted in Part I, the parties have agreed that "[t]he fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure.  The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed." *Pilgrim's Pride Corp.*, 2010 WL 1293340 at *9.

The probable amount of a judgment was astronomical.  The principal plaintiffs were a three-year-old girl, who suffered a severe spinal cord injury leaving her paralyzed from the neck down, and her mother, who suffered a severe and permanent brain injury.  The damages were, in a word, horrific.  Two completely innocent girls had their bodies irretrievably mangled and normal lives forever denied them when Johnson ran a red light and plowed into them.  The amended complaint sought compensatory damages for past and future medical costs, lifetime costs of assisted living facilities, lifetime costs of nurses, medical attendants and home care givers, lifetime lost wages, permanent disability, loss of enjoyment of life, emotional distress, and pain and suffering.  It is difficult to think of a number large enough to represent the probable amount of a judgment for these losses, even reduced to present value.  And these are just the compensatory damages; the amended complaint also sought punitive damages, which are rarely awarded in an amount less than compensatory damages.

McCrary, of course, pegs the possibility of Ceres prevailing at 100%.  As discussed in Part I, the Court disagrees.  Once the trial judge denied summary judgment, Ceres' chances of prevailing fell precipitously.  It is not necessary to quantify how far

---

[6] Ceres paid an additional amount to settle the third plaintiff's claims but does not seek its recovery in this lawsuit.  (Doc. 47 at 13).

they fell, because even a small chance of losing, balanced against the enormous probable judgment if Ceres lost, would render a $2.9 million settlement reasonable.

### III. Other Arguments.

McCrary asserts that Ceres is not the real party in interest and that it lacks standing to seek recovery of the settlement and a portion of the litigation costs at issue in this lawsuit, on the grounds that Ceres' insurer, rather than Ceres itself, paid them. (Doc. 59 at 20).[7] This would appear to present a question of interpretation of the Subcontract's indemnification clause and any Louisiana law that might bear on it, but McCrary offers no argument or authority along these – or any other – lines. Instead, it claims merely that the Court has previously reached this result in another case. (*Id*. at 20-21). The slender dicta to which McCrary cites is inapposite here. As McCrary has no other support for its position, it must fail.[8]

### CONCLUSION

For the reasons set forth above, the Court concludes that Ceres is entitled to contractual indemnity from McCrary for the $2.9 million paid in settlement of the Suit.

Ceres also seeks recovery of attorneys' fees and costs of litigation, including guardian ad litem fees. (Doc. 47 at 13). The Court directed the parties not to brief these elements of recovery until receiving a ruling as to contractual indemnity, since a ruling for McCrary would have obviated such briefing. (Doc. 49 at 2). Ceres is now **ordered** to file and serve, on or before **March 10, 2011**, a supplemental brief addressing these

---

[7] This issue was not, as Ceres says, waived by McCrary, especially given that McCrary articulated the issue at the final pretrial conference and Ceres did not object. (Doc. 61 at 6).

[8] Ceres offers Exhibit 100 should McCrary's position on standing and real party in interest be accepted. (Doc. 61 at 9-10). Because McCrary's position is rejected, Ceres' offer, construed as a motion, is **denied as moot**.

elements of recovery.  McCrary is **ordered** to file and serve its response on or before **March 21, 2011**.  Ceres is **ordered** to file and serve any reply on or before **March 28, 2011**.  The Court will take the matter under submission on March 28, 2011.[9]

DONE and ORDERED this 24th day of February, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[9] This briefing does not afford a second opportunity to support arguments that were or could have been raised previously.  Without limitation, the Court will not entertain briefing on whether Ceres was potentially liable, whether the settlement amount was reasonable, or whether Ceres lacks standing or is not a real party in interest.