**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CERES ENVIRONMENTAL SERVICES, INC.,** | ) | |
| **PLAINTIFF,** | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 1:09-cv-00642** |
| **COLONEL MCCRARY TRUCKING, LLC.,** | ) | |
| **DEFENDANT.** | ) | |

**CERES ENVIRONMENTAL SERVICES, INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS CLAIM FOR ATTORNEYS' FEES, COSTS OF LITIGATION and GUARDIAN AD LITEM FEES**

Ceres Environmental Services, Inc. ("Ceres"), Plaintiff in the above-styled action, by and through its undersigned counsel hereby submits its *Supplemental Brief in Support of Its Claim for Attorneys' Fees, Cost of Litigation and Guardian Ad Litem Fees* in accordance with this Court's Order issued on February 24, 2011. [Doc. 63].

**I. Statement of Facts**

Colonel McCrary Trucking, LLC ("CMT") was under contract with Ceres Environmental Services, Inc. ("Ceres") to provide debris removal services

following Hurricane Katrina. The subcontract between Ceres and CMT contained the following unambiguous indemnification provision:

> To the fullest extent permitted by law, [CMT] agrees to save harmless, indemnify and defend [Ceres]… from *any and all claims*, losses, penalties, demands, judgments, and costs of suit, *including legal fees and litigation expenses of any kind*, … incurred by [Ceres] …, arising out of or in any way related to the Contract Documents or performance of the Work.

[Doc. 41, p. 3] (emphasis added).

On July 11, 2007, Joe Johnson ("Johnson"), a CMT employee, was involved in a serious traffic accident. [Doc. 47, p. 1]. The injured parties sued CMT, Ceres, and others in Alabama state court ("State Court litigation"). [Doc. 47, p. 2]. CMT and Ceres separately entered pro tanto settlements in the State Court litigation. [Doc. 47, p. 2]

Ceres filed a cross-claim against CMT in the state action, seeking defense and indemnity. [Doc. 47, p. 2]. Upon obtaining severance of the cross-claim, CMT timely removed the action to this Court. [Doc. 47, p. 2].

The parties submitted cross-motions for summary judgment. Both motions were denied. [Doc. 41]. In denying the cross-motions for summary judgment, this Court determined that "all five counts of the [State] Suit unambiguously trigger the indemnity provision." [Doc. 41, p. 5]. Other issues concerning Ceres' indemnity claim were not resolved on summary judgment, and remained pending before this

Court. [Doc. 63, p. 2]. The main issue to be decided was whether Ceres was "potentially liable" in the underlying State Court litigation. [Doc. 47, p. 3].

Because the parties agreed to all pertinent facts related to the dispute, the parties proposed – and this Court allowed – the suit to be submitted on briefs. [Doc. 47, p. 8]. After reviewing the submissions, this Court by Order dated February 24, 2011, concluded that "Ceres is entitled to contractual indemnity from [CMT] for the $2.9 million paid in settlement of the Suit." [Doc. 63, p. 9]. In addition this Court directed Ceres to file and serve a supplemental brief addressing Ceres' claim for attorneys' fees, cost of litigation, and guardian ad litem fees (collectively referred to as "litigation costs"). [Doc. 63, pp. 9-10].

## II. Argument and Citation of Authority

Under Louisiana law[1], as a general rule, "attorney fees are not allowed except where authorized by statute or contract." *Nassif v. Sunrise Homes, Inc.*, 739 So.2d 183, 185 (La. 1999); *Bossier Orthopaedic Clinic v. Durham*, 747 So.2d 731, 738 (La. App. 1999)("a party shall recover attorney fees only when authorized by statute or stipulated by contract."). In evaluating an indemnity provision to determine whether an award of attorneys' fees is authorized, the general rules of contract interpretation apply. *Soverign Ins. Co. v. Texas Pipe Line Co.*, 488 So.2d 982, 984 (La. 1986). That is, "[w]hen words of a contract are clear and explicit

[1] It is undisputed that the subcontract between Ceres and CMT is governed by Louisiana law. [Doc. 63, p. 2; Doc 47, p.2].

and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id.; see also Abbot v. Equity Group, Inc.*, 2 F.3d 613, 626 (5th Cir. 1993). Moreover, "where attorney's fees are due, the amount awarded must be reasonable and is left to the sound discretion of [this] Court." *Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 898 (5th Cir. 1985); *Ardoin v. Northstar Interests*, LC, 2008 WL 4877381 (E.D.La. 2008).

With this framework in mind, Ceres is entitled to recover the litigation costs incurred in defending the claims asserted by plaintiffs in the underlying State Court litigation. The indemnity provision in the subcontract specifically authorizes the recovery of the litigation costs, and the amount requested by Ceres is reasonable. Accordingly, Ceres is entitled to indemnification in the amount of $1,672,439.13 for attorneys' fees, cost of litigation, and guardian ad litem fees.

A. <u>The Parties' Subcontract Expressly Authorizes the recovery of Litigation Costs.</u>

The indemnity provision at issue in this dispute is clear and unambiguous. Indeed, as noted in this Court's Order denying the cross-motions for summary judgment, "[t]he parties suggest no ambiguity in the indemnity provision, and the Court finds none." [Doc. 41, p. 3]. The indemnity provision, therefore, must be enforced as written.

The subcontract provides in no uncertain terms:

> To the fullest extent permitted by law, [CMT] agrees to

> save harmless, indemnify and defend [Ceres]… *from any and all claims, losses, penalties, demands, judgments, and costs of suit, including legal fees and litigation expenses of any kind*, … incurred by [Ceres] …, arising out of or in any way related to the Contract Documents or performance of the Work.

[Doc. 41, p. 3]. The provision is clear in authorizing the reimbursement of "any and all" costs of suit including "legal fees and litigation expenses of any kind." This broad authorization leaves no doubt that Ceres is entitled to recover the fees, costs and expenses incurred in the underlying State Court litigation and related matters. The only issue that remains to be determined is the amount of the award.

B. Ceres is Entitled to Indemnification in the Amount of $1,672,439.13 for Attorneys' Fees, Cost of Litigation, and Guardian Ad Litem Fees.

The indemnity provision is clear and unambiguous in authorizing the reimbursement of "any and all" litigation costs and fees. Ceres incurred substantial costs and expenses in the underlying State Court litigation and related matters. Mr. Stephen M. Johnson, Ceres' Business Manager, submitted an affidavit[2] wherein he testified as to the total amount of attorneys' fees, consultant fees, and other costs of litigation Ceres has incurred in the litigation. [Doc. 55-15]. Attached to the affidavit is a summary sheet itemizing the total costs incurred by Ceres. This summary separates the costs by calendar year and service provider. [Doc. 55-15, pp. 3-4 (bates no. 00943-00944)]. In addition, Mr. Johnson's affidavit includes a

[2] The affidavit of Mr. Johnson is attached hereto as exhibit "A".

transaction summary providing the date, amount and description of invoices paid by Ceres in relation to the State Court litigation and related matters. [Doc. 55-15, pp. 3-4 (bates no. 00945-00949)]. Finally, the individual invoices and billing statements supporting the amounts contained in the summaries are attached hereto as exhibit "B".

The principal plaintiffs in the State Court litigation "were a three year old girl, who suffered a severe spinal cord injury leaving her paralyzed from the neck down, and her mother, who suffered a severe and permanent brain injury." [Doc. 63, p. 8]. As noted by this Court, the damages were "horrific" and the "probable amount of a judgment was astronomical." [Doc. 63, p. 8]. In addition, the issues presented in this litigation were complex and diverse. This dispute touched on issues related to jurisdiction, sovereign immunity, negligence, intervening causes, contract interpretation, rights and obligations arising under a federal government contract and whether those rights extend to third parties. Witnesses were scattered throughout the Southeast and United States which caused Ceres to expend substantial amounts to locate them.

Ceres litigated the underlying dispute for nearly two years, and until the eve of trial. Given the complexity of the case, the diverse issues involved, and the potential for an "astronomical" judgment, Ceres pursued every viable legal theory leaving no stone unturned. The costs and expenses incurred by Ceres were

reasonable and necessary and, in the end, produced a reasonable settlement. [Doc. 63, p. 9].

Ceres litigation costs and expenses can be separated into four separate categories: (1) attorneys' fees; (2) expert witnesses and consultants; (3) court reporting services and copies; and (4) mediation and guardian ad litem fees. Each of these categories will be addressed in turn:

**Attorneys Fees**

Ceres incurred the following attorneys' fees in relation to the underlying dispute:

| Firm | Total Amount |
|---|---|
| Smith, Currie & Hancock, LLP[3] | **$954,629.45** |
| Burr & Forman[4] | **$273, 043.04** |
| Emmanuel Sheppard & Condon[5] | **$15,175.94** |
| Bowron, Latta & Wadsen, PC[6] | **$3,917.35** |
| Chaffe McCall, LLP[7] | **$187.50** |

---

[3] Smith Currie & Hancock served as lead counsel for Ceres in the State Court litigation and related matters.

[4] Burr & Forman served as local counsel in the Alabama State Court litigation. Burr & Forman merged with the firm Bowron, Latta & Wadsen, PC in 2008.

[5] Emmanuel Sheppard & Condon served as local counsel in the Northern District of Florida action. The Florida action sought a declaratory judgment finding that the plaintiffs were not third-party beneficiaries under Ceres' contract with the U.S. Army Corps of Engineers. It was necessary for Ceres to pursue this when plaintiffs' claimed to be intended third party beneficiaries of the safety provisions in Ceres' contract with the Corps. Plaintiffs' argued that Ceres breached its duty by failing to check the driver's license of Mr. Johnson, among other safety breaches. The decision to file in Federal Court was a strategic decision to obtain a decision outside of the State Court in Mobile, Alabama where every dispositive and substantive motion filed by Ceres was summarily denied.

[6] Bowron, Latta & Wadsen, PC served as local counsel in the Alabama State Court litigation until it merged with Burr & Forman.

As noted above, where attorney's fees are due, the amount awarded must be reasonable and is left to the sound discretion of [this] Court." *Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 898 (5th Cir. 1985); *Ardoin v. Northstar Interests*, LC, 2008 WL 4877381 (E.D.La. 2008).

The fees requested by Ceres in this dispute are reasonable for four reasons. First, the nature of the litigation was extensive[8], the issues were complex, and the opposing counsel was extremely aggressive and zealous to recover for his horrifically injured clients.[9] Second, Ceres litigated the case for nearly two years

---

[7] Chaffe McCall, LLP is a New Orleans, Louisiana firm providing Louisiana specific information germane to the representation.

[8] To demonstrate the extensive and complex nature of the litigation attached as exhibit "E" is the dockets for the State Court litigation and related matters. The docket includes over 500 entries including motions, hearings, extensive document production and discovery, pretrial practice, motions in limine, etc.

[9] Ceres encountered significant challenges in obtaining information relevant to the litigation and had to incur significant costs to overcome these challenges. Through the efforts of its investigator, Ceres was ultimately able to establish that Mr. Johnson was not impaired by alcohol or drugs at the time of the accident. This was the result of significant effort in locating and interviewing witnesses (who were scatter all across the country). For example, the passenger in Mr. Johnson's vehicle was only located after a nationwide search at a gravel pit in Louisiana. *See* affidavit of K. Dix, ¶ 26 attached hereto as exhibit "C". Likewise, Joe Johnson (the driver of the vehicle causing the accident) proved difficult to locate. As demonstrated in the State Court litigation, plaintiffs' counsel advised defendant Mr. Johnson that there was an outstanding warrant for his arrest, that he should continue to "dodge" the police, and that if he got arrested it would "hurt the case for the little girl." *See* affidavit of Mr. Joe Johnson attached as exhibit "A" to the affidavit of K. Dix. [Exhibit "C" hereto; Doc. 55-12]. In exchange for Mr. Johnson's cooperation, counsel for plaintiff made numerous cash payments to Mr. Johnson and promised he would "take care" of him after the case had settled. *Id.*

and engaged in extensive motion practice. Ceres left no stone unturned and raised every possible defense to the action. Ceres filed four dispositive motions arguing no fewer than eleven points of law and challenging each and every one of plaintiffs' claims against Ceres. [Doc. 58, p. 2]. Ceres was so vigorous and thorough in challenging the claims that CMT conceded that Ceres did not fail to assert an available defense that would have defeated the action. [Doc. 63, p.2].

Third, the effort expended by counsel for Ceres allowed it to negotiate a reasonable settlement. As noted by this Court, at the time the parties agreed to the settlement, "Ceres was not merely required to face a jury, it was required to do so with all of its defenses to liability having been judicially rejected. At that point, all Ceres could do was cross its fingers and hope for the best – a favorable jury, a change of mind by the trial judge, or a home run on appeal." [Doc. 63, p. 7]. Nevertheless, despite this predicament, Ceres was able to negotiate a reasonable settlement. [Doc. 63, p. 9]. The settlement amount was $1,940,000 *less* than the settlement reached by CMT[10] and approximately $7,100,000 *less* than Ceres' policy limits. In a private settlement discussion, plaintiffs' attorney candidly expressed to Ceres his assessment that he would obtain a judgment exceeding $40

---

Plaintiff's counsel also paid money to relatives of Mr. Johnson in exchange for signing false affidavits. *Id.* Uncovering these facts required substantial investigative effort and costs.

[10] The settlement included Mr. Johnson and R.D. Construction. [Doc. 58, p. 13]. Mr. Johnson, however, did not personally contribute to the settlement. [Doc. 58, p. 13].

Million. [Exhibit "C", ¶ 11]. Ceres' counsel considered his analysis with grave concern. [Exhibit "C", ¶11]. The favorable settlement was a direct result of the evidence and arguments developed by counsel for Ceres.

Finally, the reasonableness and propriety of Ceres attorneys' fees are supported by the affidavit testimony of Mr. Karl Dix, Jr., a partner at the firm Smith, Currie & Hancock, LLP and Mr. Edward G. Bowron, a partner at the firm Burr & Forman, LLP attached hereto as exhibits "C" and "D". These affidavits establish that the fees, time and effort reflected on their respective firm's invoices are reasonable and were necessary in the litigation. For example, as provided by Mr. Dix, his billing rate of $350 per hour is standard and in line with the rates charged by attorneys in the region with comparable experience. Similarly, the fees charged by the other attorneys and paralegals at Smith, Currie & Hancock, LLP were reasonable as compared to attorneys and paralegals in the region with similar experience and were necessary to complete the assigned tasks. It is also worth noting that Smith, Currie & Hancock, LLP does not charge its clients for administrative costs, such as copying, long distance and facsimile charges. The attorneys do not charge for travel time or other non-productive time. Those charges are structured into the hourly rates of the attorney or paralegal. Because the fees incurred were reasonable and necessary to the litigation, Ceres is entitled to recover these fees under the indemnity provision.

**Expert Witnesses and Consultants**

Due to the complex and technical issues presented, Ceres retained several expert witnesses and consultants to assist in the litigation. Each expert and consultant was retained for a discrete issue relevant to the dispute. The following is a summary of the charges incurred by Ceres:

| Expert / Consultant | Issue / Subject Matter | Total Amount |
|---|---|---|
| Riley Kiraly | Consultant hired to locate and interview various key witnesses including Mr. Joe Johnson. | **$362,916.08** |
| Smith Pachter McWhorter, PLC | Designated expert retained to counter plaintiffs' expert Steven L. Schooner. | **$26,692.72** |
| Ralph C. Nash | Consulting expert to assist in rebutting plaintiffs' expert Steven L. Schooner. | **$2,040.00** |
| Complete Rehabilitation Services | Consultant hired to evaluate vocational ability of plaintiffs. | **$1,432.37** |
| KCUFA Consulting, LLC | Consultant hired to investigate accident information and J. Johnson criminal case information. | **$1,206.95** |
| Dr. Matthew Talbot Barnhill | Expert retained to review toxicology report and medical records of Joe Johnson immediately after the accident. | **$1000.00** |

All of the costs incurred were reasonable and necessary to the State Court litigation and related matters. Accordingly, these fees are recoverable under the indemnity provision.

**Court Reporting Services and Copies**

During the course of discovery, Ceres incurred costs related to obtaining deposition transcripts, copies of medical records and similar documentation. The following is a summary of the charges incurred:

| Company | Total Amount |
|---|---|
| Legal Link, Inc. | **$7,782.10** |
| Freedom Court Reporting | **$3,164.29** |
| Birmingham Court Reporting | **$1,210.35** |
| Prolegal Copies | **$1,139.22** |
| TDL Court Reporting | **$418.10** |
| HealthPort | **$296.00** |
| Catalina M. Arata, PhD. | **$65.00** |

All of the costs incurred were reasonable and necessary to the State Court litigation and related matters and are, therefore, recoverable.

**Mediation and Guardian Ad Litem Fees**

Ceres attempted to resolve the litigation through mediation, but was unsuccessful in settling the dispute. The mediation fee was set by the mediator and split among the parties. In addition, Ceres was responsible for compensating the guardian ad litem in the State Court litigation. The amount of the fee was set by the Court. Below is a summary of the charges incurred:

| Expense | Total Amount |
|---|---|
| Guardian Ad Litem Fee | **$12,500.00** |
| Mediation Fee | **3,622.67** |

Both of these expenses were reasonable and necessary to the State Court litigation and related matters and are, therefore, recoverable.

## III. Conclusion

For the reasons set forth above, Ceres respectfully requests that this Court enter a judgment finding that CMT is liable to Ceres for indemnification of attorneys' fees, cost of litigation, and guardian ad litem fees in the amount of **$1,672,439.13**

Respectfully submitted this 10th day of March, 2011.

Respectfully submitted,
/s/ C. William Daniels, Jr.
C. WILLIAM DANIELS, JR. (DANIC4169)

BURR & FORMAN, LLP
Colonial Bank Centre, Suite 400
Post Office Box 16046
Mobile, AL 36616
Phone: (251) 344-5151
Fax: (251) 344-9696
Bill.Daniels@burr.com

/s/ Karl Dix, Jr.
KARL DIX, JR. (Georgia Bar No. 223235)

Attorneys for Plaintiff
CERES ENVIRONMENTAL SERVICES, INC.

SMITH, CURRIE & HANCOCK LLP
270 Marquis One Tower
245 Peachtree Center Avenue, N.E.

Atlanta, GA 30303-1227
Phone: (404) 521-3800
Fax: (404) 688-0671
kfdix@smithcurrie.com

**CERTIFICATE OF SERVICE**

I do hereby certify that on March 10, 2011, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Karl Dix, Jr.
COUNSEL