IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CERES ENVIRONMENTAL SERVICES,)
INC.,                          )
                               )
    Plaintiff,                 )
                               )
v.                             )   CIVIL ACTION 09-0642-WS-B
                               )
COLONEL MCCRARY TRUCKING,      )
LLC,                           )
                               )
    Defendant.                 )

## ORDER

This matter is before the Court for final resolution as to the attorney's fees and related costs component of its contractual indemnity recovery.

## BACKGROUND

The defendant ("McCrary") was under contract ("the Subcontract") to the plaintiff ("Ceres") to provide debris removal services following Hurricane Katrina. Ceres terminated the Subcontract on June 27, 2007. On July 11, 2007, a McCrary driver ("Johnson") was involved in a serious traffic accident in Baldwin County. The injured parties sued McCrary, Ceres and others in Alabama state court ("the Suit"). McCrary and Ceres eventually entered separate pro tanto settlements in the Suit.

Ceres filed a cross-claim against McCrary in the state action, seeking defense and indemnity based on contractual indemnity and McCrary's liability insurance policy. Upon obtaining a severance of the cross-claim, McCrary timely removed. Ceres has since abandoned its claim for defense and indemnity under McCrary's liability insurance policy, leaving only contractual indemnity in play. (Doc. 47 at 2; Doc. 58 at 3). On

[1]

competing motions for summary judgment, the Court ruled that the indemnity provision of the Subcontract is triggered by the Suit. (Doc. 41 at 6).

The parties thereafter requested that the case be submitted on briefs in lieu of a bench trial, (Doc. 47 at 8), and the Court agreed. (Doc. 49 at 1). The parties submitted trial briefs and exhibits, (Docs. 52-62), following which the Court ruled that Ceres is entitled to contractual indemnity from McCrary for the $2.9 million paid in settlement of the Suit. (Doc. 63 at 9).

The Subcontract provides in pertinent part as follows:

> To the fullest extent permitted by law, [McCrary] agrees to save harmless, indemnify and defend [Ceres] … from any and all claims, losses, penalties, demands, judgments, and costs of suit, including legal fees and litigation expenses of any kind, … incurred by [Ceres] …, arising out of or in any way relating to the Contract Documents or performance of the Work.

(Doc. 24, Exhibit B at 6). The plaintiff seeks an additional recovery of $1,659,939.13 for attorney's fees and litigation expenses, plus $12,500 for guardian ad litem fees, under the contractual indemnity provision. (Doc. 47 at 13). The Court held in abeyance any resolution of this portion of the case, pending its ruling on Ceres' right to contractual indemnity and further briefing on the fees and expenses issue. (Doc. 49 at 2). The parties have now submitted these materials. (Docs. 65, 67, 68, 70, 71).

## DISCUSSION

As noted, the Court has ruled that Ceres is entitled to contractual indemnity. McCrary does not dispute that attorney's fees, litigation expenses and guardian ad litem fees are subject to the indemnity obligation, and the Court rules that they are so subject. For its part, Ceres concedes that the amount awarded must be reasonable and that the determination of an appropriate amount is left to the Court's sound discretion. (Doc. 65 at 4).

**I. Motion to Strike.**

To support its claim for attorney's fees, Ceres relies primarily on the affidavit of its lead counsel ("Dix") and local counsel ("Bowron") and attached billing records. (Doc. 65, Exhibits A-E). McCrary begins its response by moving to strike the affidavits of Dix and Bowron. (Doc. 67). It argues these affidavits should be excluded because: (1) these witnesses were not identified in Ceres' initial disclosures; (2) Ceres made no expert disclosures concerning these witnesses; (3) the affidavits do not appear on Ceres' exhibit list; (4) Bowron does not appear on Ceres' witness list; and (5) the affidavits contain hearsay and double hearsay.

Ceres suggests that the first four of these objections are inapposite because it is merely seeking to prove up attorney's fees, which can be accomplished post-judgment pursuant to more forgiving procedures. (Doc. 70). Ceres relies on cases involving fees awarded by statute, rule or the Court's inherent power. Ceres, however, seeks attorney's fees and costs as part of its contractual right to indemnity. As the Court has noted in a previous order, "[w]hen the parties contractually provide for attorneys' fees, the award is an integral part of the merits of the case." *Ierna v. Arthur Murray International, Inc.*, 833 F.2d 1472, 1476 (11th Cir. 1987); *accord Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1355 (11th Cir. 2002) ("In this Circuit, a request for attorneys' fees pursuant to a contractual clause is considered a substantive issue …."). Therefore, the same procedural and proof requirements apply to Ceres' claim for fees and expenses as apply to its claim for reimbursement of the cost of settling the Suit.

Ceres was required by Rule 26(a)(1)(A)(i) to identify persons likely to have discoverable information it "may use to support its claims or defenses." Ceres did not identify Dix and Bowron, either initially or in any supplemental disclosure under Rule 26(e). (Doc. 21). Ceres therefore violated this requirement.

Ceres was required by Rule 26(a)(2)(A) to disclose "the identity of any witness it may use at trial to present" expert testimony. Ceres agrees that Dix and Bowron present

expert testimony. (Doc. 70 at 3, 5-6). Ceres did not identify Dix and Bowron as expert witnesses, (Doc. 47 at 12-13; 67 at 2), and it therefore violated this requirement.[1]

Ceres was required by the Court's standing order to list in the joint pretrial document all witnesses it would or might call. (Doc. 18, Attachment at 3-4). Ceres listed Dix as a "may call" witness but did not list Bowron. (Doc. 47 at 12-13). Ceres therefore violated this requirement.

Ceres was required by the Court's standing order to list in the joint pretrial document all exhibits "which are to be offered in evidence." (Doc. 18, Attachment at 4). Ceres listed several affidavits but did not list the affidavit of Dix or Bowron. (Doc. 47, Attachment 2). Ceres therefore violated this requirement.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The burden is on the offending party to demonstrate either that its failure to disclose was substantially justified or that the failure is harmless.[2] This determination is left to the broad discretion of the Court.[3]

As the parties were warned long in advance, (Doc. 18, Attachment at 4), the joint pretrial document was incorporated by reference by the final pretrial order. (Doc. 49 at 2). Therefore, as the parties were also warned, it can be modified "only to prevent

---

[1] McCrary does not assert that Ceres was required to provide expert reports under Rule 26(a)(2)(B).

[2] *E.g., Roberts ex rel. Johnson v. Galen, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citing Fifth and Seventh Circuit cases); *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003) (citing a First Circuit case); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001); *accord Morrison v. Mann*, 271 Fed. Appx. 841, 845 (11th Cir. 2008).

[3] *E.g., David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002); *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998); *accord Morrison*, 271 Fed. Appx. at 845.

manifest injustice." Fed. R. Civ. P. 16(e). As construed by the Eleventh Circuit, however, the Court does not always employ a strict manifest injustice standard:

> There is a presumption that a [final] pretrial order will be amended in the interest of justice and sound judicial administration provided there is no substantial injury or prejudice to the opposing party or inconvenience to the court. Upon a finding that an amendment to the pretrial order would result in either substantial injury to the opposing party or inconvenience to the court, the pretrial order should only be amended to avoid manifest injustice.

*United States v. Varner*, 13 F.3d 1503, 1507-08 (11th Cir. 1994); *accord Jacobs v. Agency Rent-A-Car, Inc.*, 145 F.3d 1430, 1432 (11th Cir. 1998).

McCrary asserts no prejudice from Ceres' Rule 26 non-disclosures, and the Court detects none. McCrary has known from the outset that Ceres claims contractual attorney's fees, and such claims are routinely if not universally established by lawyers testifying as to the necessity and reasonableness of the fees and expenses. McCrary could not have failed to appreciate at all times that Ceres would rely on such witnesses. Nor could McCrary have failed to realize that Ceres would proffer such witnesses as experts. Notably, McCrary does not suggest it would have done a single thing differently – deposition, investigation, anything at all – had Ceres listed Dix and Bowron in its initial disclosures or identified them as experts. Perhaps the question would be closer had Ceres relied on lawyers unassociated with this case, but it has not done so. Ceres' failure to comply with Rule 26(a)(1) and (2) is harmless.

Bowron is not listed as a witness in the joint pretrial document, but his partner ("Daniels"), who billed a substantial portion of the hours by local counsel, is listed there. (Doc. 47 at 12). It was clear from this designation that Ceres would use one of its local counsel to support its claim for attorney's fees, and it could not have mattered to McCrary whether that lawyer was Daniels or Bowron.

Because McCrary knew Ceres would rely on its lawyers to testify in support of its claim for fees and expenses, it could not have been harmed by the presentation of that testimony by affidavit rather than orally, especially since McCrary agreed to submit the

[5]

case on paper rather than by live testimony. (Doc. 47 at 8). Again, McCrary identifies no difference the presentation by affidavit has made to its case. An earlier submission of the affidavits would have given McCrary more time to prepare its response to them, but it still had eleven days, which it does not suggest was inadequate.[4] Ceres' failure to comply with the final pretrial order did not substantially injure McCrary, and the pretrial order is amended to list Bowron as a witness and the affidavits of Bowron and Dix as exhibits.

The final ground of McCrary's motion to strike – hearsay and double hearsay – is completely unexplained, and the Court will not develop an objection on McCrary's behalf. For the reasons set forth above, the motion to strike is **denied**.

## II. Specific Challenges.

Ceres' entitlement to attorney's fees and expenses springs from a contract governed by Louisiana law, but the parties cite no cases addressing the parameters of recovery, methods and standard of proof, or appropriate objections concerning such contractual elements of recovery under Louisiana law. As each side cite cases from other contexts without objection by its opponent, the Court utilizes the principles they reveal.

McCrary identifies the following specific objections to Ceres' claim: (1) lead counsel's use of block billing is improper; (2) the hourly rate charged by lead counsel is unreasonable; (3) the paralegals performed non-compensable work, were billed at excessive rates, and engaged in block billing; (4) the investigator's charges are excessive; and (5) fees charged in a Florida case are unrelated and otherwise unreasonable. The Court finds no additional reasons to reduce the requested award but addresses McCrary's objections in turn.

---

[4] Moreover, Ceres timely identified the underlying bills and other documentation, (Doc. 47, Attachment 2 at 2), and Ceres does not claim it lacked access to these papers, so it had an extensive period of time in which to review them and develop attacks on the claim for fees and expenses.

### A. Block Billing.

McCrary suggests that block billing, in the sense of listing all the day's tasks on a case in a single entry, without separately identifying the time spent on each task, is improper and demands an across-the-board cut in hours. (Doc. 68 at 6-8). In *Barnes*, the fee applicant's "records often lump together all the tasks performed by an attorney on a given day without breaking out the time spent on each task." 168 F.3d at 429. The Court noted the resulting "imprecision" of the proponent's records and described it as a "problem" for which the opponent should not be "penalized," and it approved the opponent's solution of dividing each day's hours by the number of tasks listed and assigning the quotient to each task. *Id.*

Block billing is problematic because it hinders the fee opponent and the Court from determining whether the time spent on each individual task within the entry is reasonable. The problem is exacerbated when a block entry includes a facially non-compensable activity or provides insufficient information to make that determination. Thus, courts have approved across-the-board reductions in block-billed hours to offset the effects of block billing. *E.g., Welch v. Metropolitan Life Insurance Co.*, 480 F.3d 942, 948 (9th Cir. 2007).[5] There may be, as Ceres complains, inefficiencies in requiring counsel to break down their daily activities more completely,[6] but it is the fee proponent's burden to show the reasonableness of its request, and it has ample incentive and opportunity to cure the problem before it arises by adequate record-keeping.

Dix's entries are often informative, but they routinely include half a dozen or more separate tasks, making it difficult for the Court to gauge reasonableness. They are also

---

[5] District courts in the Eleventh Circuit have done similarly. *E.g., Kearney v. Auto-Owners Insurance Co.*, 713 F. Supp. 2d 1369, 1377-78 (M.D. Fla. 2010); *Lil' Joe Wein Music, Inc. v. Jackson*, 2008 WL 2688117 at *13 (S.D. Fla. 2008).

[6] Since lawyers paid by the hour, such as Ceres' counsel, necessarily check their watches frequently during each day in order to keep up with their time, the additional effort of avoiding block billing when fee-shifting is contemplated appears likely to be minimal.

peppered with vague language such as "working with [John Doe]," and the even more unhelpful (and somewhat unsettling) entry, "continuing work on case." The Court does not find similar issues with the entries of others in the Atlanta office. McCrary seeks a 50% reduction of all time from the Atlanta firm, but the Court concludes that a 10% reduction in Dix's 1,561 hours adequately addresses the block billing issue. Ceres' award will be based on 1,405 hours for lead counsel.

### B. Counsel's Hourly Rate.

Dix hails from Atlanta and charged $350 an hour. McCrary argues the Court should use a $250 hourly rate for Dix based on Mobile rates. (Doc. 68 at 3-6).[7]

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999) (internal quotes omitted). The relevant market is thus Mobile, not Atlanta.

Ceres insists that Dix is worth $350 an hour because, since he has represented Ceres relating to its contracting activities for 14 years, he is very familiar with its operations, risk tolerance, etc., and so could pursue the case more efficiently. (Doc. 71 at 9). Moreover, says Ceres, Dix has over 25 years' experience representing government and construction contractors in civil litigation, and the Suit involved government contractors and contracts. (*Id*. at 2, 7). This may be so,[8] but "[a] prevailing plaintiff is

---

[7] McCrary does not seek a reduction in the rate of any other Georgia or Alabama lawyer.

[8] All Dix testified to was the number of years he has represented Ceres. He provided no information concerning the number of matters on which he has represented Ceres, the scope of the work, etc., and he did not claim to have any particularly useful knowledge about Ceres. Nor
(Continued)

not entitled to have the losing party pay for an attorney with the most expertise on a given issue, regardless of price, but only for one with reasonable expertise at the market rate." *Barnes*, 168 F.3d at 437.

The only way for Ceres to escape a cap based on Mobile area rates is to "show a lack of attorneys practicing in that place who are willing and able to handle [its] claims." *Barnes*, 168 F.3d at 437. Ceres offered no evidence to make this showing, and its use of competent local counsel demonstrates there was no absence of local attorneys able and willing to handle its claims. Dix's rate, for purposes of an award of fees, is thus capped at the Mobile area rate for lawyers of reasonably comparable skills, experience and reputation.

McCrary says that rate is $250, but this ignores that Bowron charged $275, a rate McCrary does not challenge as unreasonable. Ceres suggests an upward adjustment based on the *Johnson* factors, (Doc. 71 at 10), but its superficial treatment does not persuade the Court that any such adjustment is appropriate. Thus, the Court will utilize a $275 rate for Dix.

The combination of a lowered hourly rate and a lower number of hours results in a decrease in Ceres' requested award of $160,185.

**C. Paralegal Fees.**

Work that may appropriately be performed by paralegals and passed on to one other than the client includes "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989).

---

did Dix claim 25 years relevant experience, only 25 years as a lawyer, with no information about how much experience he actually has litigating over government contracts.

However, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Id*.

Billing records from the Atlanta firm are filled with entries like this one: "File correspondence, pleadings, and attorney work product and update pleadings index." This and like work cannot be billed to an adversary at a paralegal rate. Because these entries are so widespread, the Court cuts the Atlanta paralegal hours in half, to 275 hours. While McCrary complains of similar billing practices with respect to local counsel's paralegal, the Court finds those entries to reflect clearly compensable work.

McCrary also asserts that paralegal entries from local counsel display block billing. The Court concludes that a 10% reduction in hours, or 63.2 hours, adequately compensates for this practice.

Finally, McCrary argues that the $115 rate charged for the Atlanta paralegal and the $101 charged for the Mobile paralegal have not been shown to be reasonable in the Mobile market. "Judges in this district have repeatedly approved paralegal rates of $75 an hour." *Trotter v. Columbia Sussex Corp.*, 2010 WL 383622 at *11 (S.D. Ala. 2010); *accord Wells Fargo Bank, N.A. v. Williamson*, 2011 WL 382799 at *5 (S.D. Ala. 2011). Whether or not Ceres could have supported a higher rate by showing, for example, that these paralegals possess unusually advanced qualifications or expertise, it has not sought to do so. Accordingly, all allowed paralegal time will be at $75 per hour.

The combination of a lower hourly rate and a lower number of hours results in a decrease in Ceres' requested award of $63,797.

**D. Investigator.**

Ceres paid an investigator almost $363,000 "to locate and interview various witnesses." (Doc. 65 at 11). This consists of 2,100 hours at $150 an hour, plus approximately $58,000 in expenses. The only witnesses noted by Ceres are Johnson and the passenger in his vehicle. Johnson, whom Ceres says "proved difficult to locate" due to the efforts of plaintiffs' counsel in the Suit to keep him hidden, (Doc. 71 at 16), was

interviewed in person by the investigator on January 29, 2008 – only twelve days after the investigator opened his file. Through that date, the investigator billed only 65 hours and under $3,500 in expenses. Ceres says the unnamed passenger required a "nation-wide search" to locate, (Dix Affidavit at 8), but does not explain the efforts required and why they were reasonable. Ceres says other witnesses were scattered across the country, but it does not identify them, does not explain their significance to the case,[9] and does not explain why it required such an effort to find them.[10]

The Court is unable to find most of the investigator's charges reasonable on such a skeletal showing. Accordingly, the Court will allow only 10% of the investigator's charges. This results in a decrease in Ceres' requested award of $326,624.47.

### E. Florida Fees.

Ceres seeks reimbursement of $15,175.94 in attorney's fees and expenses in connection with the Florida action, which was brought to seek a declaratory judgment that the plaintiffs in the Suit were not third-party beneficiaries of Ceres' contract with the Corps of Engineers. (Doc. 65 at 7 n.5; Dix Affidavit at 7). McCrary challenges these expenses as unrelated to the Suit, (Doc. 65 at 11), but plainly they were. McCrary also suggests the fees were not reasonably and necessarily incurred, but the Court finds no evidence of improper or excessive billing.

---

[9] Witnesses to the accident, other than Johnson and his passenger, probably were residents of Baldwin County, where the accident occurred. Witnesses to Johnson's employment relationship with McCrary presumably were available directly through McCrary. Witnesses to the severed relationship between Ceres and McCrary presumably were available through Ceres. The Court will not speculate as to what other truly relevant witnesses might exist.

[10] Ceres says that Johnson's affidavit "confirms the challenges Ceres encountered in securing information relevant to the State Court litigation." (Dix Affidavit at 8). The affidavit, executed barely one month after lead counsel opened his file, confirms at most only that plaintiffs' counsel in the Suit unsuccessfully encouraged Johnson – and no one else – to hide.

[11]

Finally, McCrary challenges the hourly rate charged in this litigation. (Doc. 65 at 11). Attorney work was charged at $300 to $350 per hour and paralegal work at $75 to $100 per hour. Lead counsel says that, as a member of the Florida bar, in his opinion the overall fee charged was reasonable, but he does not specifically vouch for the hourly rates. Recent opinions from the Northern District of Florida suggest that the rates charged are above the ordinary in that Court. *See Plaintiff B v. Francis*, 2009 WL 2913476 at *2 (N.D. Fla. 2009) (baseline rate of $200-$300); *Smith v. Psychiatric Solutions, Inc.*, 2008 WL 4274496 at *7 (N.D. Fla. 2008) ($200-$250 as reasonable rate). Because Ceres offers no better evidence of prevailing rates, and because it does not offer evidence of Florida counsel's credentials that might justify a higher rate, all attorney time will be awarded at $200 per hour. Similarly, all paralegal time will be awarded at $75 per hour. This results in a decrease in Ceres' requested award of $3,539.50.

## CONCLUSION

For the reasons set forth above, the Court concludes that Ceres is entitled to contractual indemnity from McCrary for attorney's fees, costs and litigation expenses in the amount of $1,118,293.16. This figure will be added to the $2.9 million in contractual indemnity representing the settlement cost of the Suit and judgment entered accordingly by separate order.

DONE and ORDERED this 17th day of May, 2011.

s/ WILLIAM H. STEELE<br>
CHIEF UNITED STATES DISTRICT JUDGE